UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES W. CONACHEN, | Case No. 2:09-CV-0047-EJL-REB |
| Plaintiff, | |
| | **MEMORANDUM ORDER** |
| v. | |
| BOUNDARY COUNTY SHERIFF'S DEPARTMENT; et al., | |
| Defendants. | |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Defendants' Motion for

Summary Judgment. (Dkt. No. 42.) The Motion is made pursuant to Federal Rule of Civil

Procedure 56. The matter is ripe for the Court's consideration. Having fully reviewed the

record herein, the Court finds that the facts and legal arguments are adequately

represented in the briefs and record. Accordingly, and in the interest of avoiding further

delay, and because the Court conclusively finds that the decisional process would not be

significantly aided by oral argument, this Motion shall be decided on the record before

this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff James W. Conachen's Amended Complaint in this action raises civil

rights claims based on 42 U.S.C. § 1983, 1985, 1988 alleging violations of his First,

Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (Dkt. No. 37.) The event giving

rise to the claims occurred on the evening of February 18, 2008 when Mr. Conachen was

arrested and detained. The named Defendants are the Boundary County Sheriff's

Department ("BCSD"), the Boundary County Sheriff Greg Sprungl, and Boundary

County Sheriff's Deputy Donald Van Meter's (Collectively referred to as "Defendants").

(Dkt. No. 37.)

Prior to the evening in question, Mr. Conachen had made several reports to the

BCSD of frequent speeding in his neighborhood, vandalism of the speed limit sign, and

threats made to he and other neighbors. (Dkt. No. 37, p. 4.) Mr. Conachen alleges the

BCSD told him a visual estimation of speed would not hold up in court, which prompted

him to set up a video recording system to capture the speeding violations. Conflicts

between he and his neighbors over the speeding, Mr. Conachen argues, escalated to at

least one instance of him being threatened with a gun. (Dkt. No. 37.)  Mr. Conachen

alleges the BCSD took no action to investigate, patrol the area, or prosecute those

responsible for speeding, vandalizing, or threatening behaviors. He further alleges that the

BCSD were becoming "aggravated" over his repeated reports and started hanging up on

him whenever he would call. (Dkt. No. 37, p. 5.)

Eventually, and as a result of their alleged refusal to take action, Mr. Conachen

initiated other steps against the Defendants including a campaign to recall Sheriff Sprung,

filing a state tort claim against Boundary County, and initiating a petition to replace the speed limit sign and add a "children at play" sign. (Dkt. No. 37, p. 7.) Mr. Conachen asserts his arrest in question here was motivated by the Defendants' malice toward him because of his repeated speeding reports and these other actions taken against the Defendants. (Dkt. No. 37, p. 9.)

On the evening of February 18, 2008, Mr. Conachen placed two phone calls to the BCSD Dispatch to report a vehicle reving its engine, spinning its tires, and traveling recklessly by his residence in excess of the posted 25 miles per hour speed limit. (Dkt. No. 45, Ex. A.) During these calls, Mr. Conachen made certain comments to the BCSD Dispatcher which prompted her to dispatch officers to Mr. Conachen's residence. Deputy Van Meter, and two other law enforcement officers, responded to Mr. Conachen's home.[1] The parties' version of the evening diverge some what upon Deputy Van Meter's arrival at Mr. Conachen's home. Mr. Conachen asserts that Deputy Van Meter entered his property with an assault rifle pointed at him, ordering him out of his house, to drop the spot light he held in his hand, and to lay face down on the ground in the snow. Mr. Conachen asserts he was then, and without justification, handcuffed and tasered by Deputy Van Meter without being told why he was being arrested. (Dkt. No. 37, p. 8.)

---

[1] The two other law enforcement officers who responded to Mr. Conachen's residence on February 18, 2008 were United States Boarder Patrol Agent Granger and Bonners Ferry Police Department Officer Joe Schoulten. These officers were not named as Defendants in this action.

Defendants do not necessarily dispute Mr. Conachen's account of the events that evening but, instead, contend they acted reasonably in light of the threats Mr. Conachen had made in his calls to BCSD Dispatch that evening, the fact that he was armed with a .45 caliber pistol, and he was actively resisting the officers. (Dkt. No. 42.) Mr. Conachen any resistance. (Dkt. No. 51.)

Mr. Conachen was eventually arrested and then taken to the emergency room where the taser barbs were removed and a mental health evaluation was completed. (Dkt. No. 37, p. 9.) He was booked into the Boundary County jail and later charged with resisting arrest and obstructing an officer in violation of Idaho Code § 18-705. (Dkt. No. 45, Aff. Mumford, Ex. D.) Mr. Conachen was later acquitted by a jury of all charges.

As a result of the foregoing, Mr. Conachen initiated this lawsuit, filing an Amended Complaint on April 26, 2010 raising three counts:

Count I:     Action for Deprivation of Civil Rights (42 U.S.C. § 1983) Fourth
             Amendment Violations

Count II:      Action for Deprivation of Civil Rights (42 U.S.C. § 1983) First,
             Fourth, Fifth, Eighth and Fourteenth Amendment Violations

Count III:    Action for Conspiracy to Interfere with Civil Rights (42 U.S.C.

§ 1985)

(Dkt. No 37.) Mr. Conachen claims that as a result of the Defendants' actions he has been diagnosed with stress related illness, had to hire an attorney to defend himself of the charges, and he was forced to sell his home, losing more than $67,000, and move out of Boundary County. The Defendants have filed the instant Motion for Summary Judgment on all counts as well as supporting materials which the Court now takes up. (Dkt. No. 42.)

## STANDARD OF LAW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).[2] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

_____

[2] Federal Rule of Civil Procedure 56 was revised effective December 1, 2010. Though the Motion for Summary Judgment in this case was filed prior to December 1, 2010, the Court will apply the revised Rule 56 as applying it in this action is not infeasible and does not work an injustice. *See* Fed. R. Civ. P. 86(a)(2)(B).

materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting evidence to show that a genuine issue of fact remains. The party opposing the motion for summary judgment may not rest upon the mere allegations or denials of his or her pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 248. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then summary judgment is proper as "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).[3]

---

[3] *See also,* Rule 56(e) which provides:

(e)     **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
(1)     give an opportunity to properly support or address the fact;
(2)     consider the fact undisputed for purposes of the motion;
(3)     grant summary judgment if the motion and supporting materials--including the

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

---

(4)     facts considered undisputed--show that the movant is entitled to it; or issue any other appropriate order.

*Id.* at 374 (citation omitted). Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

Counts I and II of the Complaint both raise § 1983 claims based on numerous grounds while Count III alleges a § 1985 claim for conspiracy to interfere with civil rights. (Dkt. No. 37.) The Court will address each claim below in turn.

## I.    Counts I and II: 42 U.S.C. § 1983 Claims

Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens promulgated in 42 U.S.C. § 1983 which provides in pertinent part:

> Every person who, under color of any statute, […] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. In order for a plaintiff to prevail on a § 1983 claim they must show that (1) the actor that deprived them of their rights acted under color of law and (2) that the action actually deprived them of a constitutional right. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). In this case (1) is not disputed by either of the parties; police officers carrying out their duties act under color of law. It is (2) which is at issue here with Mr. Conachen alleging numerous violations of his constitutional rights arising from the events on the

evening he was arrested.

Count I of the Complaint raises several grounds for the § 1983 claims based on the Fourth and Fourteenth Amendments including: unlawful entry, unlawful seizure/detention, use of excessive force, arrest without probable cause, and malicious prosecution. (Dkt. No. 37, pp. 11-12.) The § 1983 claim in Count II raises other constitutional grounds including the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. (Dkt. No. 37, pp. 12-14.) The Court will address each ground for both Counts I and II below.

A.    **Warrantless Entry Upon Property**

Mr. Conachen first claims a violation of his civil rights under the Fourth Amendment when Deputy Van Meter entered his property without a warrant on the night he was arrested. (Dkt. No. 37.) Defendants contend that, as a law enforcement officer, Deputy Van Meter's entry onto Plaintiff Conachen's property was proper under the Fourth Amendment. Alternatively, Defendants argue that Defendant Van Meter is entitled to qualified immunity. (Dkt. No. 42.)

The Fourth Amendment of the Constitution protects people against unreasonable searches and seizures. *Katz v. United States*, 389 U.S. 347 (1967). "It is well settled under Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218,

219 (1973) (quoting *Katz*, 389 U.S. at 357). One of these exceptions provides that law enforcement officers may enter the curtilage of a home to ask the occupant questions without first obtaining a search warrant. *United States v. Hammett,* 236 F.3d 1054, 1059 (9th Cir. 2001) (discussing cases). Another of the "specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth*, 412 U.S. at 219 (citations omitted). Such consent must be given "freely and voluntarily." *Id*. Whether consent was given "freely and voluntarily" is determined by looking at the totality of the circumstances. *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009).

Defendants argue Deputy Van Meter's actions fall within an exception to the warrant requirement because he entered the curtilage of Mr. Conachen's home to ask him questions regarding the threats he made in his calls to the BCSD Dispatch. (Dkt. No. 42-2, p. 4.) Further, Defendants argue Mr. Conachen consented to law enforcement officials entering his property when he called the BCSD Dispatch to complain about speeders. (Dkt. No. 42-2, p. 5.) Mr. Conachen counters that Defendant Van Meter was not there to investigate as he never asked him any questions regarding his report. (Dkt. No. 51, p. 4.) Instead, Mr. Conachen asserts, Deputy Van Meter unlawfully entered his property with an assault rifle drawn immediately ordering him to get on the ground; he never asked any investigation questions. (Dkt. No. 51, p. 4.)

In support of their argument, Defendants supplied the audio recordings of Mr.

Conachen's calls to the BCSD Dispatch made on February 18, 2008. (Dkt. No. 45, Ex. A.) In the first call, Mr. Conachen stated:

> Hi. This is Jim Conachen on Shingle Mill Loop Road. I just had somebody come by my house, spin the tires, rev the engine, drive reckless as harassment, and I want to know what you're going to do about it, or should I take a shotgun and just take care of it myself?

(Dkt. No. 45, Ex. A.) During the second call, Mr. Conachen stated "Send a state policeman and a coroner." (Dkt. No. 45, Ex. A.) During his deposition these audio recordings were played for Mr. Conachen who acknowledged that he was the caller. (Dkt. No. 42-3, pp. 15-16.)

Upon receiving these calls, BCSD Dispatch advised Deputy Van Meter, who was the responding officer, that Mr. Conachen had reported traffic complaint and specifically stated that he "wanted to know what [you] are going to do about it" or should "he take a shotgun and go deal with it himself." (Dkt. No. 42-3, Ex. E, p. 61.) BCSD Dispatch also relayed the contents of Mr. Conachen's second call back stating: "send a state patrol officer and a coroner." (Dkt. No. 42-3, Ex. E. p. 61.) Further information from the Idaho State Police Dispatch with whom Mr. Conachen had also called, indicated Mr. Conachen had reported a traffic complaint and had indicated he was armed and "willing to handle the problem himself." (Dkt. No. 42-3, Ex. E, p. 62.)

The Defendants have also submitted evidence in the form of police reports and BCSP Dispatch records. (Dkt. No. 42-3.) Deputy Van Meter's police report indicates he was dispatched to Mr. Conachen's residence in response to his traffic complaint and his

threatening language used in his two calls to BCSD Dispatch. (Dkt. No. 42-3, Ex. E, p. 63.) Deputy Van Meter reported that "[t]hese two calls lead me to believe that Conachen may have just or was preparing to commit violence against someone." Deputy Van Meter's police report also reflects that Mr. Conachen "has made recorded threats towards others in the past and during this incident he made recorded threats towards others." (Dkt. No. 42-3, Ex. E, p. 62.)

The Defendants having presented such evidence, Mr. Conachen cannot defeat summary judgment by relying on conclusory allegations in his pleadings. *See Anderson*, 477 U.S. at 248. Mr. Conachen has the burden of coming forward with specific facts as required by Rule 56 to show that Deputy Van Meter's entrance onto his property was a violation of his constitutional rights. *Id*.; *see also* Fed. R. Civ. P. 56(c). As the Supreme Court in *Celotex* recognized, while the nonmoving party need not produce evidence that would be admissible at trial to oppose a summary judgment motion, they must make some showing of evidence above the bare assertions of the pleadings. *Celotex Corp.*, 477 U.S. at 324. Further, Rule 56(c) requires that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by "either (A) citing to particular parts of materials in the record including affidavits or declarations or (B) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Mr. Conachen has failed to do either.

Mr. Conachen has offered nothing beyond the bare allegations in the Complaint and the arguments in his Response brief to support his claims. (Dkt. Nos. 37, 51.)[4] There are no witnesses, statements, depositions, or affidavits beyond his assertions in the pleadings and the conclusory statements in his brief responding to the Motion that claims that the actions of Deputy Van Meter were unreasonable. This is insufficient to satisfy the *Celotex* requirements for responding to a motion for summary judgment. *See Celotex*, 477 U.S. at 322-23. Failing to properly support an assertion of fact or address another party's assertion of fact, allows the Court to "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Thus, in analyzing this claim, the Court will do so as provided for by Rule 56 in light of the submissions filed in this case. In doing so, the Court finds Deputy Van Meter's entry onto Plaintiff's property was lawful.[3]

---

[4] "A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *See e.g. Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (citing *McElyea v. Babbitt*, 833 F.2d 196, 198 n. 1 (9th Cir. 1987)) (quotations omitted). The Complaint filed here, however, is not verified as it was not signed under the penalties of perjury that its contents were true and correct and the allegations were not based purely on the plaintiff's believe but on his personal knowledge.

[3] Because Mr. Conachen is proceeding as a *pro se* litigant, the Court is mindful that its review of the pending motion and the Complaint are undertaken with an eye on Ninth Circuit standards regarding *pro se* litigants as set forth in *Tucker v. Carlson*, 925 F.2d 330 (9th Cir. 1991)) and construing the Plaintiff's pleadings in the most favorable light. However, *pro se* litigants are held to same procedural rules as counseled litigants.

Based on the record here, the Court finds Deputy Van Meter lawfully entered the curtilage of Mr. Conachen's residence. The officer's presence that evening was made in respond to Mr. Conachen's phone calls in which he made threats towards others and requested that the police come to his property in response to his complaint. (Dkt. No. 45, Ex. A.) Deputy Van Meter had been dispatched to ask Mr. Conachen questions regarding his calls and, therefore, was there lawfully. *See Hammett*, 236 F.3d at 1059.

As to, Defendants argument that Mr. Conachen "freely and voluntarily" consented to the officers' presence excusing the need for a warrant, the Court finds otherwise. The consent exception to the warrant requirement may, only in very limited circumstances, be found where consent may be inferred from conduct. *See United States v. Gilbert*, 774 F.2d 962, 964 (9th Cir. 1985). Such implied consent can not be found on the record here given Mr. Conachen's conduct when the officers' arrived. There is no dispute that Mr. Conachen called the BCSD and expected the officers to respond. In his deposition, Mr. Conachen stated that after he had made his calls to the BCSD Dispatch and the Idaho State Police he leaned against the side of his house and "waited for them to show up, because I knew they were going to show up." (Dkt. No. 42-3, p. 17.) The record, however, does not evidence that Mr. Conachen consented to the law enforcement officers' entry onto his property. Although Mr. Conachen placed angry calls to the BCSD Dispatch, he did not expressly consent to the officers' entry onto his property in those

---

*King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

calls or do so once the officers' arrived. In the video, Mr. Conachen's actions do not evidence a landowner consenting to the officers' presence when he can be heard yelling "Who's on my property?" (Dkt. No. 45, Ex. B.) Based on the record here, the Court finds Mr. Conachen did not consent to the officers' presence at his home.

Regardless of the lack of consent, the Court concludes Defendant Van Meter's entry onto Plaintiff's property was proper under the Fourth Amendment as he and the other law enforcement officers were there under the exception to the warrant requirement allowing law enforcement officers to enter the curtilage of a home to ask the occupant questions without first obtaining a search warrant. *Hammett,* 236 F.3d at 1059. As such, the Court will grant the Motion for Summary Judgment on this claim.[4]

### B.    Seizure Without Probable Cause or Reasonable Suspicion

Mr. Conachen claims that Deputy Van Meter violated his Fourth Amendment right when the officers seized him at night without probable cause or reasonable suspicion. (Dkt. No. 37.) Defendants argue that Deputy Van Meter had a reasonable suspicion that Mr. Conachen was armed and engaged in criminal activity. (Dkt. No. 42-2, pp. 7-10.)

A seizure occurs when, through coercion, "physical force, or a show of authority, in some way restricts the liberty of a person." *United States v. Chan-Jimenez*, 125 F.3d

---

[4] In his Response, Mr. Conachen attempts to raise new Fourth Amendment arguments of unlawful search relating to allegations he was drug tested and mentally evaluated at the hospital following the arrest. (Dkt. No. 51, p. 4.) These arguments were not raise in the Amended Complaint. (Dkt. No. 37.) Because these arguments were not properly raised nor leave to amend requested, the Court will not consider them at this late stage. *See Gilmore v. Gates*, 382 F.3d 1312, 1315 (11th Cir. 2004).

1324, 1325 (9th Cir. 1997). A seizure that is premised on reasonable suspicion is not per se unconstitutional under the Fourth Amendment, as long as it is sufficiently brief and minimally intrusive. *United States v. Sharpe*, 470 U.S. 675, 685 (1985). Reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000).

There is no dispute here that Mr. Conachen was seized. (Dkt. No. 42-2, pp. 7-8.) The evidence supplied by the Defendants is instead offered in support of their assertions that the seizure of Mr. Conachen was lawful. (Dkt. No. 42-3.) Based on the evidence provided by the Defendants, the Court finds that Deputy Van Meter had reasonable suspicion to believe Mr. Conachen was engaged in criminal activity. In particular the Court finds the threatening phone calls Mr. Conachen made to the BCSD Dispatcher gave Deputy Van Meter a reasonable suspicion that Mr. Conachen was armed because he had "threatened to take a shotgun and handle it himself." (Dkt. No. 42-3.) Again, Mr. Conachen has provided no evidence outside of his non-verified Complaint and Response. (Dkt. Nos. 37, 51.) As such, the Court will "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). In doing so, the Court finds no disputed facts exist as to whether Deputy Van Meter had reasonable suspicion upon which to base the seizure of Mr. Conachen. Mr. Conachen had made threatening phone calls to the BCSD Dispatch, was armed, and resisted complying with the officers' commands. Even viewing the facts in the record in

the light most favorable to Mr. Conachen, the record contains sufficient undisputed

material facts to establish probable cause to believe Mr. Conachen committed the crimes

of resisting and obstructing. As such, Defendants are entitled to summary judgment on

this claim.

### C.      Arrest Without Probable Cause

In Count I of the Complaint, Mr. Conachen claims Defendant Van Meter violated

his constitutional rights by arresting him without probable cause. (Dkt. No. 37, p. 11.)

(citing *Michigan v. Summers*, 452 U.S. 692, 700 (1981). "A claim for unlawful arrest is

cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was

without probable cause or other justification." *Dubner v. City and County of San

Francisco*, 266 F.3d 959, 964-65 (9th Cir. 2001) (citation omitted). In order to be lawful,

an arrest must be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S.

318, 354 (2001). "Conversely, a police officer who arrests without probable cause has

committed a civil rights violation." *Turner v. County of Washoe*, 759 F.Supp. 630, 634

(D. Nev. 1991). An arrest occurs "if, under the circumstances, a reasonable person would

conclude that he was not free to leave after brief questioning." *United States v. Miles*, 247

F.3d 1009, 1012 (9th Cir. 2001) (quoting *United States v. Del Vizo*, 918 F.2d 821, 824

(9th Cir.1990)).

"Probable Cause exists when the facts and circumstances within the officer's

knowledge are sufficient to cause a reasonably prudent person to believe that a crime has

been committed." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).

Stated differently, "[p]robable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *Crowe v. County of San Diego*, 608 F.3d 406, 436 (9th Cir. 2010) (The necessary probable cause arises for a warrantless arrest when the officer on scene has facts and circumstances within his or her knowledge that is sufficient to cause a prudent person to believe that the arrestee has committed an offense.). "The standard for probable cause is an objective one-the 'arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause ....'" *Peschel v. City of Missoula*, 686 F.Supp.2d 1107, 1118 (D. Mont. 2009) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citations omitted)).

Defendants maintain that the probable cause necessary for the warrantless arrest was present on the night in question as Mr. Conachen was arrested for violation of Idaho Code § 18-705 which provides:

> "Every person who willfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his officer or who knowingly gives a false report to any peace officer, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars, and imprisonment in the county jail not exceeding one year."

Here, Mr. Conachen argues Deputy Van Meter was not actually discharging any duty and insists that he was not charged with any crime other than obstruction. (Dkt. No.

51, pp. 9-10.) Mr. Conachen maintains he followed all orders given in a timely manner and denies resisting the officers. (Dkt. No. 51, p. 9.) Defendants, however, have provided evidence that Deputy Van Meter had within his knowledge facts and circumstances that would warrant a prudent person to believe Mr. Conachen was violating Idaho Code § 18-705. (Dkt. Nos. 42-3, 45.) The officers were responding to the calls Mr. Conachen made that evening to the BCSD Dispatch. Upon initiating contact with Mr. Conachen, whom the officers reasonably believed to be armed, he did not immediately comply with the commands given by the officers. The video of his arrest shows Mr. Conachen refusing "step forward," "lay down," and resisting the officers' attempts to put his hands behind his back. (Dkt. No. 45, Ex. B.) The police reports from that evening further corroborate the audio, video, and deposition testimony evidencing Mr. Conachen's failure to obey commands. (Dkt. No. 42-3.) Mr. Conachen has not produced any affidavits or other evidence to rebut the Defendants' submissions so as to establish a genuine issue for trial on this claim. Based on the evidence in the record, the Court finds Deputy Van Meter had probable cause to believe Mr. Conachen had violated Idaho Code § 18-705.

Though the crimes of resisting and obstructing may not generally be considered serious, the officers here acted lawfully in arresting Mr. Conachen as they undoubtedly had probable cause to believe Mr. Conachen had committed the crimes. *See Atwater*, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Moreover, the fact that Mr. Conachen was ultimately

not convicted of the crimes for which he was arrested, charged, and prosecuted does not invalidate the officers' probable cause at the time of the arrest. "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested [or not charged with a crime at all] is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (citations omitted); *Wright v. City of Philadelphia*, 409 F.3d 595, 603-04 (3d Cir. 2005) (noting it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with, and finding no constitutional violation where probable cause supported one of the four charges on which the defendant was arrested); *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1996). Whether a police officer has probable cause to arrest is ascertained by looking at the facts known to the officer at the time of the arrest. *Turner*, 759 F.Supp. at 634. "It has long been established that a police officer who arrests with probable cause is immune from suit in a civil rights action." *Id*. at 633.

As such, The Court finds the warrantless arrest of Mr. Conachen did not violate his Fourth Amendment rights and the Motion is granted on this claim. Though the Court has concluded probable cause to seize/arrest Mr. Conachen exists, the Court must still determine whether, under the circumstances, the officers used excessive force when taking him into custody. *See Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) ("Because the excessive force and false arrest factual inquiries are distinct,

establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa.").

**D.    Excessive Force**

Mr. Conachen next alleges that Deputy Van Meter used excessive force during the arrest because he was laying face down in the snow with his arms outstretched at the time he was tased. (Dkt. No. 51.) Defendants counter arguing Deputy Van Meter tased Mr. Conachen only after he refused to obey the officers' orders and begun actively resisting the officers. (Dkt. No. 42-2, p. 11.)

The appropriate area of inquiry for a claim of excessive force incident to an arrest is the reasonableness test of the Fourth Amendment balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In determining whether law enforcement officers used excessive and, therefore, "unreasonable" force in the course of an arrest, the Ninth Circuit requires the court to conduct a three-step analysis. "First, we assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003) (quoting *Graham*, 490 U.S. at 396-97) (citations and quotations omitted). Second, the court analyzes "the importance of the government interests at stake" by evaluating the *Graham* factors: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting

to evade arrest by flight." *Id.* Third, the court must consider the totality of the circumstances and weigh the gravity of the intrusion against the government's interest in order to determine whether the force employed was constitutionally reasonable. *Id.*; *see also Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (stating the "inquiry is not limited to the specific *Graham* factors, ... [the court] must look to whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*, and then must consider 'whether the totality of the circumstances justifies a particular sort of seizure.'") (quoting *Graham*, 490 U.S. at 396); *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)).

When weighing an excessive force claim, summary judgment is appropriate if the Court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under all circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *see also Graham*, 490 U.S. at 397. Alternatively, "the court may make a determination as to reasonableness where, viewing the evidence in the light most favorable to [the plaintiff], the evidence compels the conclusion that [the officers'] use of force was reasonable." *Hopkins v. Andaya*, 958 F.3d 881, 885 (9th Cir. 1992). The Court can therefore find summary judgment if the force the officers used was appropriate in any circumstance, or if the circumstances in the specific case were such that the only conclusion is that the force was reasonable.

While considering this question, the Court must be cognizant that "all determinations of unreasonable force must embody allowance for the fact that police

officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Henrich*, 39 F.3d at 914 (quoting *Graham*, 490 U.S. at 396-97) (internal quotations omitted). In addition, a plaintiff can succeed on an excessive force claim only if they have suffered some compensable injury as a result of their treatment. *Graham* 490 U.S. at 394.

### (1)  Application of the Ninth Circuit's Three-Step Analysis

In viewing the facts of the case, the Defendants have submitted audio and video recordings of the phone calls to dispatch and the subsequent arrest. (Dkt. No. 45.) During the first call, Mr. Conachen asks the Boundary County Dispatcher if he should get his gun and handle the situation himself. (Dkt. No. 45, Ex. A.) In the second call, Mr. Conachen tells the Boundary County Dispatcher to send a state police officer and a coroner to his home. (Dkt. No. 45, Ex. A.) The first video track shows Mr. Conachen talking on a telephone with the BCSD Dispatcher to complain about the speeders in front of his home. (Dkt. No. 45, Ex. B, Track 1.) The second video is a recording of the arrival of the officers and arrest of Mr. Conachen. (Dkt. No. 45, Ex. B, Track 2.) In addition, the defense has supplied the police reports and portions of the deposition testimony of Mr. Conachen and Deputy Van Meter. (Dkt. No. 42-3.) Mr. Conachen has filed a Response to the Motion for Summary Judgement but, again, provided no evidence by way of affidavit or deposition to counter the evidence submitted by the defense. The Court has considered the arguments of the parties, examined the evidence in the record, and applies the same to the *Graham*

factors as follows.

The video of the arrest shows Deputy Van Meter and two other officers arriving on Mr. Conachen's property. (Dkt. No. 45, Ex. B, Track 2.) Deputy Van Meter's initial approach is with his patrol rifle and flashlight pointed at Mr. Conachen directing him to show his hands and to step away from the home. Deputy Van Meter then orders him to get on the ground. Deputy Van Meter repeats his command to get on the ground five times on the video before Mr. Conachen lowers to his knees. (Dkt. No. 45, Ex. B, Track 2.) Deputy Van Meter orders him to lay down. Mr. Conachen can be heard warning the officers that he has a gun in his waistband. While starting to lay down, Mr. Conachen is verbally resistive of the officer's commands stating "I'm going to sue you fuckers." (Dkt. No. 45, Ex. B, Track 2.) The officers are clearly concerned regarding the weapon in Mr. Conachen's possession as they can be heard stating "watch his hands." Mr. Conachen again tells the officers "there's a .45 in my waist." Once he is prone on the ground, two officers approach each of Mr. Conachen's arms in order to handcuff him telling Mr. Conachen to "relax his arms" so they can put his hands behind his back.

At this point, the video shows the officers struggling to place Mr. Conachen's arms behind his back and handcuff him. During the struggle the officers are unable to locate Mr. Conachen's arms behind his back. One officer then shouts to Deputy Van Meter, at which point Deputy Van Meter tased Mr. Conachen. (Dkt. No. 45, Ex. B, Track 2.) The video clearly shows there was resistance to the officers' attempts to get Mr. Conachen's hands behind his back and handcuffed. After he was tased, the officers on the video still

struggled somewhat to locate Mr. Conachen's arms but quickly do so and then secure Mr. Conachen in handcuffs.

During his deposition, Mr. Conachen agrees that the video is an accurate depiction of the arrest and concedes that he was armed at the time of his arrest with a loaded .45 Caliber pistol. (Dkt. No. 42-3, Ex. A, p. 20.) In his Response brief, however, Mr. Conachen maintains that he did not refuse to obey the officers' commands or resist the officers. (Dkt. No. 51.)

Deputy Van Meter's police report is consistent with the video. In his report, Deputy Van Meter states that upon contacting Mr. Conachen he ordered him to show his hands, which he did, and that Mr. Conachen advised that he had a gun in his waistband. (Dkt. No. 42-3, Ex. E, p. 63.) Mr. Conachen was then commanded to step forward and ordered multiple times to "get on the ground." (Dkt. No. 42-3, Ex. E, p. 63.)  After initially refusing, the report goes on, Mr. Conachen complied and went to the ground. Deputy Van Meter states in his report that once on the ground two officers attempted to control his arms in order to detain him and continue their investigation but Mr. Conachen started resisting by "clinching his fist" and refusing to be handcuffed. While he was resisting, Deputy Van Meter reported, Mr. Conachen was able to get his left arm free and reach under his body towards his waistband. Deputy Van Meter reported being "in fear that he was reaching for his gun and I deployed my taser, striking him on the lower back." (Dkt. No. 42-3, Ex. E, p. 63.) Deputy Van Meter states in his report that he deployed his taser because Mr. Conachen "was armed with a loaded Model 1911, .45 Caliber pistol and he

refused to follow simple verbal commands." (Dkt. No. 42-3, Ex. E, p. 62.)

The defense also supplied the Incident Report from the Bonners Ferry Police Department Officer who responded to assist at Mr. Conachen's residence on the evening in question. (Dkt. No. 42-3, Ex. E, p. 65-67.) The narrative of that report is essentially the same as Deputy Van Meter's account of the events surrounding the arrest.

### Step 1:        Quantum of force

The Court begins the excessive force analysis by evaluating the type and amount of the actual force used to determine if it was objectively reasonable. *See Deorle v. Rutherford*, 272 F.3d 1272, 1279 (quoting *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1198 (9th Cir. 2000) (The Court must "first assess the quantum of force used to arrest [the plaintiff] by considering the 'type and amount of force inflicted.'")). The Supreme Court has held that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397. Thus, the actual force that was used in arresting Mr. Conachen is the force that must be considered, regardless of the intentions of the Defendants during the event. *Parker v. Town of Swansea*, 310 F.Supp.2d 356, 367 (D. Mass. 2009) (quoting *Glasco v. Ballard*, 768 F.Supp. 176, 179 (E.D. Va. 1991)).

The force employed here was Deputy Van Meter's use of a taser. Mr. Conachen maintains the use of such force against him was unreasonable and excessive causing him great physical pain. (Dkt. No. 37, pp. 8.) The video of Mr. Conachen's arrest shows he was

tased once with the taser in "dart mode." (Dkt. No. 42-3.) The deployment of a taser in "dart-mode" constitutes an intermediate level of force, as such, its use must be justified by a strong governmental interest that compels its use. *See Law v. City of Post Falls*, ___ F.Supp.2d___, No. 2:09-cv-504-CWD, 2011 WL 744668, *9 (D. Idaho Feb. 23, 2011).[5]

The Court finds based on the record that the use of such intermediate force in this case was reasonable given the information known to the officers at the time of the arrest. In particular, the officers were aware of threats by Mr. Conachen prior to the evening in question and that Mr. Conachen had made threatening calls that evening indicating he was armed and possibly intending to take action. Based on this information, the responding officers were reasonable in proceeding cautiously in their approach and detention of Mr. Conachen to investigate. *See Adams v. Williams*, 407 U.S. 143, 146 (1972). In this case, Mr. Conachen's threats in his calls to both the BCSD and Idaho State Police Dispatches necessitated a response from law enforcement. The government has an interest in enforcing the law and providing for the safety of police officers and bystanders. *Graham*, 490 U.S. at 396. Such response further demanded caution by the officers given the nature of the threats and the fact that Mr. Conachen was likely armed.

---

[5] In *Law*, the Court relied on the Ninth Circuit's decision in *Brooks v. City of Seattle*, 594 F.3d 1018 (9th Cir. 2010). The Ninth Circuit has since granted an *en banc* rehearing of *Brooks*. *See* 623 F.3d 911 (9th Cir. Sept. 30, 2010). Regardless, the Ninth Circuit case law consistently has characterized the use of a taser in "dart-mode" to constitute an intermediate level of force. *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). The cases distinguish such force from the use of a taster in "drive-stun mode," which is considered less than intermediate force. *See Law*, 2011 WL 744668, *10-11.

**MEMORANDUM ORDER**

In addition, the officers were responding to a remote area at night in the dark. Mr. Conachen's resistive behavior upon the officers' arrival in refusing to obey their commands, being verbally resistant, and failing to cooperate in placing his hands behind his back warranted action by the officers in order to maintain the safety of the officers. Based on these facts and in this situation, the Court finds the deployment of the taser by Deputy Van Meter was reasonable and justified; particularly since the officers initially attempted other less intrusive measures by giving verbal commands and using hand-tactics to attempt to handcuff Mr. Conachen before resorting to the taser.

### Step 2: Weighing the Governmental Interest

Applying the Graham standard requires the Court to evaluate "(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others…[, and] (3) whether [he] [was] actively resisting arrest at the time of the arrest." *Deorle*, 272 F.3d at 1280 (quoting *Chew v. Gates*, 27 F.3d 1432, 1440-41 (9th Cir. 1994)) (referring to the three step approach in *Graham*). Ultimately, the Court must weigh the interests of the government in enforcing the law and providing for the safety of police officers and bystanders against the individual's right to be free from intrusive and excessive force. *Graham*, 490 U.S. at 396. The Court recognizes the Ninth Circuit's caution that because "such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom […] summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (citations omitted).

The Defendants argue that at the time of the tasing, Deputy Van Meter believed Mr. Conachen had shot, or was about to shoot, one of his neighbors, and was potentially responding to a homicide. (Dkt. No. 42-2, p. 12.) Defendants point to the conversations Mr. Conachen had with the BCSD Dispatch in which he threatens to take a gun and handle the situation himself, and his request to the dispatcher for a coroner. (Dkt. No. 45, Ex. A.) Defendants further maintain Mr. Conachen was resisting and obstructing the police officers by refusing to obey the officers' commands and engaging in a "profane diatribe." (Dkt. No. 42-2, p. 12.) Mr. Conachen claims the Defendants knew no crime had been committed when they arrived with their weapons drawn and that it is not a crime to be armed on his own property (Dkt. No. 51, p. 7.)

In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005), the crime at issue was obstructing a police officer in performance of his duties. *Id.* at 698. The plaintiff in that case had refused to remove his hands from his pockets and was shot with pepper spray, thrown to the ground and while on the ground attacked by a dog three times and pepper sprayed four more times. *Id.* at 693-94. The Ninth Circuit found that under police guidelines the force that was employed against the plaintiff was the highest possible short of deadly force and could not be justified by the minor infraction. *Id.* at 701-2. In *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), a mentally ill man suffered permanent brain damage when police took him to the ground and put their knees on top of him, causing him to asphyxiate. *Id.* at 1055. Though he had not

committed any crime, the Ninth Circuit concluded that "some force was surely justified in restraining [the plaintiff] so that he could not injure himself or the arresting officers." *Id.* at 1059. What was challenged in the case was not the takedown or the handcuffing, but the officers putting their weight on top of the plaintiff. *Id.* at 1057. The force used by Deputy Van Meter in this case is less than that used in *Smith* and may have been somewhat akin to that employed in *Drummond*.

Obviously if the applicable crime here were a potential homicide, this factor weighs in favor of Deputy Van Meter as such crime is of the utmost serious. However, the Court finds that Defendants' statement that Deputy Van Meter "believed Plaintiff either had shot, or was about to shoot, one of his neighbors, and was potentially responding to a homicide" (Dkt. No. 42-2, p. 12), to be an exaggeration of the circumstances leading to Mr. Conachen's arrest. When considering the more applicable crimes of resisting arrest and obstruction to the facts of this case, such crimes are not serious. *See Brooks v. City of Seattle*, 599 F.3d 1018, 1028 (9th Cir. 2010), *en banc* rehearing granted, 623 F.3d 911 (9th Cir. 2010). Thus, this factor weighs in favor of Mr. Conachen. However, as discussed in more detail herein, given the circumstances that evening, the use of a taser on Mr. Conachen was justified.

### (b)    *Immediate Threat*

"[W]hether the suspect poses an immediate threat to the safety of officers or others" is the most important *Graham* factor. *Smith*, 394 F.3d at 702 (citing *Chew*, 27 F.3d at 1441). However, "a simple statement by an officer that he fears for his safety or the safety

of others is not enough; there must be objective facts to justify such a concern." *Deorle*, 272 F.3d at 1281. In the cases discussed above, the threat posed by the plaintiffs to the officers has been minimal. In *Smith*, the defendant, though he had his hands in his pockets, was already known not to be armed. *Smith*, 394 F.3d at 693-94. In *Davis*, the plaintiff was handcuffed and surrounded by hotel security officers when he was beaten. *Davis*, 478 F.3d at 1051. In *Deorle*, the plaintiff was unarmed and thirty feet from the officer and had not been given a warning. *Deorle*, 272 F.3d at 1277-78.

In contrast to those cases, Mr. Conachen posed a greater threat to the officers here than any of the defendants in the previously discussed cases. Deputy Van Meter had been dispatched to Mr. Conachen's home in response to his threatening calls to BCSD Dispatch. Based on those calls, Deputy Van Meter had sufficient information upon which to base a reasonable belief that Mr. Conachen was armed and dangerous. As a result, Deputy Van Meter and the other law enforcement officers who responded needed to proceed with caution in their dealings with Mr. Conachen. The officers arrived at Mr. Conachen's home in a remote area in the dark of night. Upon their arrival, as depicted in the video, Mr. Conachen advised the officers he was armed, refused to immediately comply with the officers' verbal commands, and resisted to the officers efforts to handcuff him. (Dkt. No. 45, Ex. B.) Such actions by Mr. Conachen, given the information known to Deputy Van Meter, necessitated an appropriate response from the officers.

Mr. Conachen maintains that he did not threaten or resist the officers or attempt to flee and posed no threat to the Deputies as he was "deliberately moving slowly to avoid

risking misinterpretation of any fast movement..." (Dkt. No. 51.) These allegations and

arguments, however, are only contained in Mr. Conachen's Complaint and Response brief.

(Dkt. Nos. 37, 51.) The Defendants, on the other hand, have come forward with evidence

countering Mr. Conachen's claims including police reports as well as a video of the arrest.

(Dkt. Nos. 42-3, 45.)

The police reports state that Mr. Conachen actively resisted being handcuffed and

that when Deputy Van Meter tased him, Mr. Conachen had pulled his left hand toward his

waistband where his weapon was located. (Dkt. No. 42-3, Ex. E.) The video tape of the

arrest corroborates the police reports showing Mr. Conachen was armed, not immediately

compliant with the officers' verbal commands, and that there was a struggle to restrain Mr.

Conachen whom the officers' knew possessed a gun. (Dkt. No. 45, Ex. B, Track 2.) In the

video, the officers are seen struggling to restrain Mr. Conachen prior to his being tased

and, following the tasing, the officers having to relocate his arm and struggle to place it

behind his back before they could handcuff him. (Dkt. Nos. 42-3, 45, Ex. B, Track 2.) Mr.

Conachen has presented no evidence to rebut the offerings of the Defendants. Given these

circumstances and based on the record, the Court finds Mr. Conachen posed an immediate

threat to the officers. *See* Fed. R. Civ. P. 56(c), (e).

### (c)     *Resisting Arrest*

The third *Graham* factor necessarily overlaps with the second given the facts of this

case. Again, Mr. Conachen denies resisting the officers. (Dkt. Nos. 37, 51.) The

Defendants have brought forth depositions, police reports, and the video of the arrest

indicating Mr. Conachen was actively resisting the officers. (Dkt. Nos. 42-3, 45.) Mr. Conachen has not brought forth any countering evidence. As such, the Court finds this factor to weigh in favor of the Defendants. *See* Fed. R. Civ. P. 56(e)(2). Both police reports state that Mr. Conachen had resisted and refused to follow their commands. (Dkt. No. 42-3, Ex. E.) Moreover, the video evidence of the arrest reveals Mr. Conachen was not immediately compliant with the officers' verbal commands, was verbally abusive towards the officers, and struggled with the officers while they attempted to handcuff him. (Dkt. No. 45, Ex. B.)

### Step 3: Consideration of the Totality of the Circumstances

Because the touchstone for excessive force claims is the Fourth Amendment's reasonableness standard, there is no mechanical test that will capture all of the relevant factors to determine whether a given use of force is excessive. Thus, courts must consider the totality of the circumstances which can include such factors as alternative levels of force, warnings, the existence of probable cause, and the conformity of the defendant officers' actions with department guidelines. *See Forrester v. City of San Diego*, 25 F.3d 804, 806 n. 2 (9th Cir. 1994); *Deorle*, 272 F.3d at 1283-84 (whether warnings were given); *Smith*, 394 F.3d at 701-01 (availability of alternative methods). While police officers "are not required to use the least intrusive degree of force possible" when carrying out an arrest, it is still appropriate to consider what their options were. *Forrester*, 25 F.3d at 807; *see also Davis v. City of Las Vegas*, 478 F.3d 1048, 1056 (9th Cir. 2007).

Deputy Van Meter was justified in the amount of force employed to restrain and

arrest Mr. Conachen under the circumstances of this case. The crime or crimes for which Mr. Conachen was potentially committing at the time posed an immediate threat to the officers particularly under the circumstances here. The officers were responding to phone calls made by Mr. Conachen to the BCSD Dispatcher which were threatening and reasonably lead officers to believe he had a gun and had possibly threatened to use it. Upon arriving at the remote setting on a dark evening, the officers encountered Mr. Conachen who was resistive of the officers' commands and had a weapon. The video of the arrest shows officers struggling to get Mr. Conachen in handcuffs. The continued refusal to obey officer commands required the officers to take action to control the situation by restraining Mr. Conachen. The fact that other alternatives to achieving that control may have existed does not necessarily render the force used to be of a disproportionate nature given the increasing threat that Mr. Conachen posed to the officers and other members of the public. Moreover, the officers took other less invasive measures prior to the tasing by attempting verbal commands and hand techniques to secure Mr. Conachen. Considering all the circumstances, the Court finds the force used by the officers to restrain Mr. Conachen was proportionate to the immediate threat he posed to the officers. Based on the foregoing and given the facts and circumstances presented in the record and unrebutted by Mr. Conachen, the Court finds the Defendants did not violate Mr. Conachen's constitutional right to be free from excessive force and the Motion for Summary Judgement will be granted on that claim. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding where the court finds the Constitution was not violated the inquiry is at an

end.)

###   E.      Qualified Immunity

As to the claims against Deputy Van Meter, the Defendants alternatively argue that if it is found that Deputy Van Meter violated Mr. Conachen's constitutional rights, he is nevertheless entitled to qualified immunity for his actions. (Dkt. No. 42-2, pp. 6, 10, 14-15.) Qualified immunity offers protection to government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Ninth Circuit has articulated a three-step analysis to be used in determining whether an official is entitled to qualified immunity. The Court must consider (1) whether the plaintiff has identified a specific federal or statutory right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official of its parameters, and (3) whether a reasonable officer could have believed his or her conduct was lawful. *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1388 (9th Cir. 1997) (citing *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996)). Regardless of whether the constitutional violation occurred, the officer should prevail if the officer could have reasonably believed that his conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). The plaintiff bears the initial burden of proving the right was clearly established. *Sweaney*, 119 F.3d at 1388.

The first two elements of the test could be met here. It is likely Mr. Conachen can identify a specific federal or statutory right that has been allegedly violated which was

clearly established. However, Defendants argue that it was reasonable for Defendant Van

Meter to believe that his actions were lawful. Qualified immunity operates "to protect

officers from the sometimes 'hazy border between excessive and acceptable force.'"

*Broasseau v. Haugen*, 534 U.S. 194, 198 (2004). The focus is on whether the officer had

fair notice that his or her conduct was unlawful. *Id*. In this case, Deputy Van Meter could

reasonably have believed that his conduct in entering the property, seizing, tasing, and

ultimately arresting Mr. Conachen was lawful. The video shows two other officers holding

Mr. Conachen down and shouting for assistance. (Dkt. No. 45, Ex. B.)  Such a situation

justified some level of force. Deputy Van Meter knew Mr. Conachen was armed, and

could reasonably have believed in such circumstances that the amount of force used was

reasonable and necessary in this situation. The Court finds a reasonable officer in the same

circumstances could have believed his or her conduct in tasing Mr. Conachen was lawful.

As such, were the Court to have found that Deputy Van Meter had violated Mr.

Conachen's constitutional rights, the Court would conclude he is nevertheless entitled to

qualified immunity on this claim. Defendant's request for summary judgment on this claim

is granted.

### F.    Malicious Prosecution

In his Complaint, Mr. Conachen accuses the Defendants of making false statements

in police reports in order to bring and continue a malicious and wrongful prosecution

against him. (Dkt. No. 37.) Defendants deny the allegation and counter that the only reason

Mr. Conachen was arrested was due to his failure to comply with Deputy Van Meter's

**MEMORANDUM ORDER**                                         36

commands and for resisting the officers as they attempted to put him in handcuffs. (Dkt. No. 42-2.)

To sustain a claim for malicious prosecution, the "plaintiff must show that the Defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995). "[P]robable cause is an absolute defense to malicious prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009). Mr. Conachen has not carried his burden on this issue.

As described above, Mr. Conachen is unable to show that he was prosecuted without probable cause. *See Brown v. Selfridge*, 244 U.S. 189, 192 (1912) (holding that plaintiff bears the burden of proving malice and lack of probable cause). Mr. Conachen argues he was prosecuted so he would be discredited, and due of his efforts to have Defendant Sprungl recalled. (Dkt. No. 51.) However, Mr. Conachen does not point to any evidence he has provided indicating probable cause was lacking for his arrest. He further points out that he was acquitted by a jury of the charges. This reality, however does not save his claim here. "The mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause." *Freeman*, 68 F.3d at 1189. Defendants Motion for Summary Judgment on this claim is granted.

G.    **First Amendment Claims**

Mr. Conachen makes two First Amendment claims in his Complaint: first, for

violation of the right to petition the government to redress a grievance under the First and Fourteenth Amendments and, second, that his arrest was motivated by retaliation for his recall campaigns and his website.

As to the first claim, Mr. Conachen alleges the Defendants violated his First and Fourteenth Amendment rights when they refused to issue citations and make arrests based on his complaints. "The Due Process Clause of the Fourteenth Amendment provides that '[n]o State ... shall deprive any person of life, liberty or property, without due process of law.' " *DeShaney v. Winnebago County Dept. Of Social Services*, 489 U.S. 189, 194 (1989). However, nothing in the language of the Due Process Clause "requires the State to protect the life, liberty and property of its citizens against invasion by private actors." *Id.* at 195. Thus, State officials have no constitutional duty to protect the public from crime absent a special relationship between the State official and a particular member of the public, which only arises when the State restrains an individual's freedom to act on its own behalf. *See id.* at 200: *see also Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699-700 (9th Cir. 1990). Moreover, police officers do not have an affirmative duty to investigate crimes in a particular manner or to protect one citizen from another. *See Gini v. Las Vegas Metro, Police Dept.*, 40 F.3d 1041, 1045 (9th Cir. 1994). Because the Defendants here had no affirmative duty to issue citations or make arrests based on Mr. Conachen's complaints, their failure to do so does not give rise to a valid First or Fourteenth Amendment claim.

As to the second claim, Mr. Conachen argues his First Amendment rights were violated because he was arrested because of his actions and opinions expressed about the

BCSD. Such a retaliation claim requires Mr. Conachen to prove the Defendants took action "that would chill or silence a person of ordinary firmness from future First Amendment activities." *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231 (9th Cir. 2006). Mr. Conachen must also prove that the Defendant's desire to cause the chilling effect was a but-for cause of the Defendants' actions. *Id* at 1232. The Defendants do not dispute the first prong of the requirement, but maintain that Mr. Conachen cannot prove but-for causation. (Dkt. No. 42-2, p. 17.) The Court agrees.

Mr. Conachen did not address the second element of this claim in his Response. (Dkt. No 51.) Mr. Conachen only addressed the first prong, which is not in dispute. With no response or evidence to rebut the defense argument, the Court has viewed the evidence in the record as undisputed and, thereupon, finds that Defendants are entitled to summary judgment on the First Amendment claims. Deputy Van Meter's presence at Mr. Conachen's home was in response to his phone calls to the BCSD Dispatcher. As Defendants argue, the only reason Deputy Van Meter went to Mr. Conachen's property that night was to in response to Mr. Conachen's phone calls to the dispatcher. (Dkt. No. 42-2, p. 17.) Moreover, as determined above, Mr. Conachen was arrested as a result of his refusal to comply with the responding officers' commands. Accordingly, the Motion is granted on this claim.

## H.      Equal Protection Claim

Count II of the Complaint states a claim for violation of the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 37, p. 12.) The Fourteenth Amendment

states that "no state shall...deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. This clause protects every person against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445. Such claims require evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *see also Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978) (establishing that liability under § 1983 requires evidence of individual participation in the alleged violation).

The Complaint, however does not allege that Mr. Conachen has been treated differently from other similarly situated individuals. (Dkt. No. 37.) In fact, the Complaint does not provide any facts supporting such a claim. The only allegations relating to the Equal Protection Claim are contained in Mr. Conachen's Response where he states .... "to the best of his knowledge, he is the first Boundary County resident to be tased and arrested for calling in a complaint. (Dkt. No. 51.)

Successful Equal Protection claims have been recognized when brought by a "class of one" where the plaintiff has alleged that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Ninth Circuit, however, has indicated that such actions are disfavored because they threaten to "provide a federal cause of action for review of almost every executive or administrative government decision." *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007) (discussing a

case alleging employment discrimination by the government).

Here again, Mr. Conachen has failed to provide any evidence that he has been treated differently from others who are similarly situated. The proper frame of reference for this question is to examine other individuals who have been tased in similar circumstances. Though he claims to be the "first" to be tased and arrested for filing a complaint, Mr. Conachen has shown no evidence of how others have been treated, and how his treatment differs from theirs. Moreover, the fundamental flaw in this argument is that Mr. Conachen was tased and arrested for resisting and obstructing a law enforcement officer; not for merely filing a complaint. As such, Mr. Conachen has not met his burden on this claim and the Motion for Summary Judgment is granted.

## I.      Due Process Claims

Mr. Conachen alleges violation of his right to Due Process in his Complaint, however, he fails to state how Defendants violated this right. (Dkt. No. 37.) A violation of the Fourteenth Amendment requires an intentional deprivation of liberty or property; a negligent act by government or government officers does not give rise to a constitutional claim under § 1983. *Daniels v. Williams*, 474 U.S. 327, 328-29 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). On this record, there is no evidence even of negligence, let alone intentional wrongdoing.

Mr. Conachen does not address this claim in his Response to Memorandum in Support of Defendant's Motion for Summary Judgment. (Dkt. No. 51.) As such, the Court will consider the Defendants' evidence as undisputed when ruling on their Motion for

Summary Judgment. *See* Fed. R. Civ. P. 56(c), (e). Having done so, the Court finds as a matter of law that summary judgment is appropriate on this claim as the undisputed facts do not support such a claim.

### J.     Cruel and Unusual Punishment

Defendants move for summary judgment on Mr. Conachen's cruel and unusual punishment claims, arguing that because Mr. Conachen was never convicted of a crime the Eighth Amendment is not implicated. (Dkt. No. 42-2, pp. 19-20.) Mr. Conachen's Complaint does not state the crime for which he was being punished. However, in his Response brief, Mr. Conachen claims the tasing he received was punishment, whether or not he was later convicted of the crime of obstruction. (Dkt. No. 51.)

The Eighth Amendment provides "excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." U.S. Const. amend. VIII. The United States Supreme Court examined the history of the amendment and previous decisions and confirmed that the Eighth Amendment was designed to protect those convicted of crimes. *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). Since Mr. Conachen was never actually convicted of any crime relating to this case, the Eighth Amendment is not implicated. As such, Defendants' motion for summary judgment on this claim is granted.

### K.     Municipal Liability for § 1983 Claims

Mr. Conachen seeks damages against Boundary County Sheriff Sprung, in his official capacity, and the BCSD alleging they implemented an unconstitutional policy

adopted by its officers. (Dkt. No. 37.) Mr. Conachen alleges that Defendant Sprungl was aware that Deputy Van Meter had a propensity for engaging in acts of excessive force toward citizens, but hired him anyway. Mr. Conachen further asserts that Defendant Sprungl fostered an environment at the BCSD where deputies were led to believe that it was permissible to violate citizens' civil rights through acts of aggression and violence. (Dkt. No. 37.) Namely, Mr. Conachen points to a posting in the BCSD break room entitled "13 rules to live by" which includes Rule #10 stating "Always cheat; Always win; The only unfair fight is the one you lose." (Dkt. Nos. 37, pp. 10-11 and 51, p. 12.)

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Local governing bodies [...] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [...] the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decisions officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978). However, where there is no constitutional violation by the officers, there can be no municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding no principle "authorizes the award of damages against a municipal corporation when ... the officer inflicted no constitutional harm."). This rule applies regardless of the actual policies of the municipality. *Id.* ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force

is quite beside the point.") (emphasis in original). Because the Court has already concluded that no constitutional injury was suffered by Mr. Conachen in connection with his claims, the Motion for Summary Judgment will be granted as to the claims against the municipal Defendants.

Furthermore, if a constitutional violation had been found, the burden is on Mr. Conachen to show a policy or custom on the part of either the BCSD or Boundary County, which can be proven by the municipality's negligence in training or failure to respond to constitutional violations. *Gilette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). The Defendants have appropriately pointed to a lack of such evidence. Again, Mr. Conachen refers to a posting at the BCSD's break room entitled "13 Rules to Live By" which he argues promotes a policy of unconstitutional practices by the officers. In response, the defense has provided the deposition of Sheriff Sprung where he testified under oath that he did not know about the posting and upon becoming aware of the posting of a list called "13 Rules to Live By" he immediately instructed that it be removed. (Dkt. No. 42-3, Ex. B, p. 28.) Mr. Conachen has not disputed this evidence or offered any rebuttal of how the posting evidences a policy or practice by the BCSD of unconstitutional actions.

## II.    Count III: 42 U.S.C. § 1985 Conspiracy Claims

In Count III of the Amended Complaint, Mr. Conachen raises a claim under § 1985 alleging the Defendants conspired to violate his civil rights in retaliation for his actions taken against the BCSD. (Dkt. No. 37, pp. 14-15.) In particular, Mr. Conachen claims the Defendants concocted a plan to "teach him a lesson" by arresting and then prosecuting

**MEMORANDUM ORDER**            44

him. (Dkt. No. 37.)

In § 1985, Congress created a cause of action to punish conspiracies to deprive individuals of their civil rights even if no violation of a plaintiff's constitutional rights can be shown. The statute provides that there shall be liability where two or more persons conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). There are multiple sections of § 1985 but Mr. Conachen fails to specify which section his claim falls under. Neither sections (1) or (2) are at issue in this case as (1) is designed to allow government officers to perform their duties and (2) is designed to protect parties, witnesses and jurors from intimidation. *See* 42 U.S.C. § 1985. Thus, section(3) is the most applicable here. The Supreme Court has interpreted § 1985(3) such that "the language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffon v. Breckenridge*, 403 U.S. 88, 102 (1971).

In their motion for summary judgment, Defendants point out that Mr. Conachen is not a member of a protected class for the purposes of equal protection. (Dkt. No. 42-2.) Mr. Conachen contends a discriminatory intent exists based on his status as a "new-comer" to the county, as a member of the Democratic Party, and as a sponsor of a "Recall Sheriff Sprungl" campaign. (Dkt. No. 51, p. 12.) However, the laws Mr. Conachen was arrested under are neutral on their face, and Mr. Conachen has provided no evidence or allegation,

**MEMORANDUM ORDER**                                    45

beyond his own arrest, that the laws were applied with a disparate impact, or that such

impact is a result of discriminatory intent as required to show a violation of Equal

Protection. *See Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995). As such, Defendants

motion for summary judgment on the 42 U.S.C. § 1985 Conspiracy Claims is granted.

## ORDER

Based on the foregoing, the Court being fully advised in the premises, it is

**HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 42) is

**GRANTED** and this case is **DISMISSED IN ITS ENTIRETY**.

DATED: **April 29, 2011**

Honorable Edward J. Lodge
U. S. District Judge